IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RAYMOND STINDE,  ) | |
| R34993,  ) | |
|   ) | |
|    Plaintiff,  ) | |
|   ) | Case No. 24-cv-111-MAB |
| vs.  ) | |
|   ) | |
| SGT. ROYSTER,  ) | |
| C/O EDWARDS,  ) | |
|   ) | |
|    Defendants.  ) | |

# MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

Plaintiff Raymond Stinde, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Menard Correctional Center (Menard), brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. (Doc. 2). The present case was severed from an existing lawsuit, *Stinde v. Wooley, et al.*, Case No. 22-cv-2197-GCS (S.D. Ill. Jan. 17, 2024) (Docket entry 12). At the time of severance, Plaintiff was prompted to notify the Court if he wished to proceed in this separate action, and he was warned that he would incur another $405 filing fee and the newly severed complaint would be subject to initial review. Plaintiff confirmed in his recent response that he would like to pursue this case, and he has already been granted IFP status and has made an initial partial filing fee payment. (Doc. 7).

Plaintiff's Complaint (Doc. 2) is now before the Court[1] for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## THE COMPLAINT

The above-captioned case is limited to Plaintiff's allegations against Defendants Sgt. Royster and C/O Edwards, which make up just a few pages of his overall pleading. (Doc. 2 at 16-18). Plaintiff alleges that on the morning of May 4, 2021, he "had words" with Defendant Royster that prompted Royster to order a shakedown of his cell. Royster opted to move Plaintiff from an open bar cell to a cell with a steal door, which is viewed as a form of punishment for inmates. (Doc. 2 at 16).

Plaintiff arrived at cell 414 and immediately noticed it was deplorable, so he asked Defendant Edwards numerous times to see a crisis team. Defendants Edwards and Royster refused a crisis team and commanded Plaintiff to remove his hands from the chuckhole or they would be broken. Plaintiff made one more plea for a crisis team before

---

[1] The Court has jurisdiction to resolve Plaintiff's motions and to screen his Complaint in light of his consent to the full jurisdiction of a magistrate judge and the Illinois Department of Corrections' and Wexford's limited consent to the exercise of magistrate judge jurisdiction as set forth in the Memorandums of Understanding between the Illinois Department of Corrections and Wexford and this Court.

Defendant Edwards began to slam the metal chuckhole door on his hands. Royster told Edwards to hold his hands and Royster then began twisting and bending Plaintiff's fingers to further disfigure them.

Plaintiff's left pointer finger was injured, he had two cuts on this finger, and his left knuckle was injured near his ring finger. (Doc. 2 at 17). Plaintiff's right hand was more seriously damaged with a gash by his wrist, and two smaller cuts on the same wrist. Plaintiff displayed his bloody hands through the chuckhole and asked for medical attention, but defendants walked away laughing and high fiving. (Doc. 2 at 17).

Plaintiff repeatedly asked for medical help via sick call for the four days following the incident. (Doc. 2 at 17). He informed a mental health worker that he needed care on May 7, and she indicated she would see what she could do. However, Plaintiff was not ultimately seen until May 9, 2020. Nurse Nicole gave him ointment and band aids, but the prison was out of pain medication so Nurse Nicole promised she would bring some to him when they were resupplied. Plaintiff did not get pain medication until he returned to sick call on May 13, 2021. Plaintiff has a fellow inmate who witnessed this interaction with the chuckhole. (Doc. 2 at 66, Affidavit of Tony Hampton).

Plaintiff remained in cell 414 in deplorable conditions. Specifically, he alleges that the bedframe is so rusty that it stains any clothing that touches the rust. He throws his stained clothing away. When the showers turn on, the cell floods. Each time he presses the light or the toilet buttons, water seeps out. The ceiling is moldy and the paint chips off the walls and falls everywhere. (Doc. 2 at 17-18).

The Court will adopt the three claims previously designated in the original case, but will renumber them as follows:

**Claim 1:** **Eighth Amendment excessive force claim against Royster and Edwards for slamming Plaintiff's hands in the chuckhole;**

**Claim 2:** **Eighth Amendment deliberate indifference claim against Royster and Edwards for failing to provide Plaintiff with medical care after injuring his hands;**

**Claim 3:** **Eighth Amendment conditions of confinement claim against Royster and Edwards for placing Plaintiff in a cell with rust, water, and peeling paint.**

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

## ANALYSIS

Based on the allegations in the Complaint, Claims 1 and 2 concerning excessive force and deliberate indifference to Plaintiff's resulting injuries are sufficient to proceed beyond initial review against Defendants Royster and Edwards.

In Claim 3, Plaintiff alleges that Royster and Edwards should also be responsible for moving him to a cell with subpar conditions of confinement. To establish a conditions of confinement claim, an inmate must establish (1) a deprivation that is, from an objective standpoint, sufficiently serious that it results in the denial of the minimal civilized

measure of life's necessities, and (2) where prison officials are deliberately indifferent to this state of affairs. *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016), citing *Farmer v. Brennan*, 511 U.S. 825, 824 (1994). Conditions may be considered collectively when analyzing a conditions of confinement claim, and the duration of the allegedly harmful conditions is relevant to the existence of an Eighth Amendment violation. *Id.* Many conditions standing alone are not sufficient to give rise to an Eighth Amendment conditions of confinement claim, but they must also be considered collectively. *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006).

Plaintiff alleges that he asked Royster and Edwards to see a crisis team over the conditions of the cell, but he does not express if he actually discussed the conditions with these defendants or asked for a different cell at the time that they placed him in cell 414. Plaintiff only alleges that Royster and Edwards were involved with his placement in cell 414 on a single day, and he does not suggest he ever interacted with them again about moving cells or improving the conditions of that cell. The Court will assume for now in Plaintiff's favor that he at least informed Royster and Edwards (or they could see) that the bed in the cell was rusty, the paint was chipped, and the ceiling had some mold. However, given their brief cell front interaction, the Court will not assume they knew about the flooding or water seeping out of the light or toilet button because presumably these conditions arose later.

As such, the Court must ask if the rust, chipped paint, and mold were enough together or alone to sustain an Eighth Amendment conditions of confinement claim. The duration of the conditions can be an important factor in the analysis, but Plaintiff does

not allege Edwards or Royster had anything to do with his confinement in cell 414 beyond bringing him there on May 4, 2021, so the Court will not consider duration of the conditions as to these two defendants. While the rust and chipped paint are understandably undesirable, neither of these conditions appears to pose an actual hazard to inmate safety. At worst, Plaintiff claims that his clothes would be stained by the rust and then he would choose to throw them away, but this is an inconvenience or unpleasantry and not a constitutional violation.[2]

This leaves just the potential mold on the ceiling of the cell. While prolonged exposure to mold could have health implications, Plaintiff has not explained how long he stayed in this cell, if he ever raised the conditions again with the defendants or other prison officials, or if he suffered any ill-effects to his health that might be attributable to the mold. The presence of mold, without any accompanying allegations, is insufficient to make out a conditions of confinement claim. *See e.g., Mason v. Miles*, 2023 WL 2631548 at *10-11 (N.D. Ill. Mar. 24, 2023) ("the mere presence of dirt or mold does not suggest a severe deprivation[.]"). Based on the limited information about the duration and severity of the conditions, and the fact that Plaintiff only alleges he told Royster and Edwards about his situation once, the Court finds that Claim 3 is not sufficient to proceed, as plead.

---

[2] Living conditions which "cause inconvenience or discomfort do not rise to the level of a constitutional violation." *Hickman v. St. Clair Cnty. Jail*, 2020 WL 3489239, at *2 (S.D. Ill. June 26, 2020) (*citing Adams v. Pate*, 445 F.2d 105, 108-09 (7th Cir. 1971)). "Potentially dangerous conditions that are merely noted, but result in no injury, typically fail to state claim." *Hickman,* 2020 WL 3489239, at *2 (*citing Walker v. Peters*, 233 F.3d 494, 502 (7th Cir. 2000) ("Because he cannot show injury, he cannot make out a claim....")).

DISPOSITION

**IT IS HEREBY ORDERED THAT Claims 1 and 2** of the Complaint (Doc. 2) survive initial screening as described above against Defendants Sgt. Royster and C/O Edwards.  By contrast, **Claim 3** is insufficient to state a claim and is dismissed without prejudice.

The Clerk of Court is **DIRECTED** to prepare for Sgt. Royster and C/O Edwards: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 2), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff.  If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

**Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.**

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* was granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than 14 days after a transfer or other change of address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute.  FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: March 21, 2024**

/s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**

## Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear. As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.